# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE DIVISION

| | |
|---|---|
| **JAMES CRAIG VIZINAT** | **CIVIL ACTION NO. 6:14-cv-00953** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **UNUM LIFE INSURANCE COMPANY OF AMERICA** | **MAG. JUDGE CAROL WHITEHURST** |

## RULING

Pending before the Court is a Motion for Summary Judgment [Doc. No. 37] filed by Defendant Unum Life Insurance Company of America ("Unum"). Unum moves the Court for summary judgment on the basis that Plaintiff James Craig Vizinat's ("Vizinat") claims under the Employment Retirement Benefits Act ("ERISA"), as amended, 29 U.S.C. § 1001, *et seq.*, are untimely. Vizinat opposes the motion.

For the following reasons, Unum's Motion for Summary Judgment is GRANTED.

## I. FACTS AND PROCEDURAL HISTORY

Unum issued Group Policy 521 344 001 to CXY Energy, Inc. ("CXY") with an effective date of January 1, 1998 ("the Policy"). The Policy provided group long term disability ("LTD") coverage to eligible employees of CXY. In pertinent part, the Policy provides:

**CERTIFICATE SECTION**

. . . When making a benefit determination under the policy, UNUM has discretionary authority to determine your eligibility for benefits and to interpret the terms and provisions of the policy.

**WHAT ARE THE TIME LIMITS FOR LEGAL PROCEEDINGS?**

You can start legal action regarding your claim 60 days after proof of claim has been given and up to 3 years from the time proof of claim is required, unless otherwise provided under federal law.

**WHAT ARE DEDUCTIBLE SOURCES OF INCOME?**

UNUM will subtract from your gross disability payment the following deductible sources of income:

1. The amount that you receive or are entitled to receive under:

    - a workers' compensation law
    - an occupational disease law
    - any other **act** or **law** with similar intent.

    \* \* \* \*

3. The amount that you, your spouse and your children receive or are entitled to receive as disability payments because of your disability under:

    - the United States Social Security Act

    \* \* \* \*

6. The amount that you receive under Title 46, United States Code Section 668 (the Jones Act).

7. The amount that you receive from a third party (after subtracting attorney's fees) by judgment, settlement or otherwise.

Vizinat was employed by CXY and was a participant in the LTD plan sponsored by his employer. Vizinat was injured in a work-related accident on February 1, 1999, and submitted a claim for disability benefits under the Policy.

On October 25, 1999, Unum advised Vizinat that his claim was approved and that the Policy paid 60% of monthly earnings, reduced by other income benefits such as workers' compensation and SSDI benefits. Initially, Vizinat was receiving $3,536 monthly in workers' compensation benefits, which exceeded the amount of the monthly disability benefit under the Unum policy, so he received only the minimum monthly benefit of $288.34.

On September 10, 2002, Vizinat's counsel wrote to Unum and provided it with a copy of settlement documents regarding Vizinat's workers' compensation claim. Because Vizinat was no longer receiving workers' compensation benefits and the settlement did not provide for future benefits, counsel requested that Vizinat be paid the full amount of his monthly disability benefit.

The settlement documents reflect that, as a result of the work-related accident, Vizinat had filed a third-party tort suit alleging that he was a Jones Act Seaman. Counsel for Vizinat also provided Unum with documentation that Vizinat had settled his third-party tort claim for $850,000.00, of which Vizinat had netted $400,000.00.

Vizinat's counsel also provided Unum with a copy of Vizinat's SSDI award letter indicating that he would be entitled to benefits beginning in May 2002.

On October 21, 2002, Unum wrote to Vizinat's counsel enclosing the relevant policy provisions and explained that it was allowed to offset Vizinat's disability benefits from a third-party judgment, settlement, or otherwise, and/or the amount he received under 46 U.S.C. § 688, the Jones Act. Unum calculated the offset for the third-party settlement by dividing the total amount received by Vizinat by the number of months left on the claim at the time the settlement was signed, which resulted in a monthly offset of $1,646.54.

Unum advised that it was also entitled to reduce the monthly disability payment by the amounts Vizinat received for both the individual and family portion of the SSDI benefits. Thus, Unum explained that Vizinat would continue to be entitled to receive $288.34 (the minimum monthly benefit under the Policy) for the duration of the claim which, assuming Vizinat continued to remain disabled, would be through October 16, 2022.

In an October 17, 2002 letter, Vizinat's counsel advised Unum that the workers' compensation claim had settled with no money being received for future benefits. Thus, counsel took the position that Vizinat was entitled to the full monthly benefit under the Policy.

Vizinat's counsel contacted Unum on October 22, 2002 indicating that he was unaware of an offset for the third-party settlement and requested that Unum send him a complete copy of the Policy.

Unum received additional correspondence from Vizinat's counsel dated November 6, 2002. While he acknowledged that Unum was entitled to an offset for SSDI benefits, he stated that he disagreed with Unum's assessment that it was entitled to an offset for the third-party tort settlement. Vizinat's counsel demanded that the disability benefit be increased to the full amount, less the SSDI offset and stated that if payments were not increased, a lawsuit would be filed in federal court.

On January 14, 2003, Unum wrote to Vizinat's counsel stating that it had requested information about the total amount of SSDI benefits being received, including family benefits, but had received no response. Thus, Unum indicated that it would estimate the amount of SSDI benefits that Vizinat and his dependents were eligible to receive in calculating the benefits owed. Unum also indicated that it would offset for SSDI individual benefits in the amount of $846.50, in accordance with the October 10, 2002 award letter from the SSA.

On May 16, 2003, Vizinat's counsel contacted Unum by telephone advising that he questioned Unum's right to offset the third-party settlement and asking "what he could do administratively to file suit against Unum."

Unum subsequently received correspondence from Vizinat's counsel dated May 19, 2003 stating that he did not agree with Unum's calculation of the benefit owed to his client in the amount of $288.00 per month. He expressed that he did not believe that Unum was entitled to an offset for the third- party settlement. He stated that it was his intention to file suit in federal court over the amount of the payment.

Unum directed correspondence to Vizinat's counsel dated May 19, 2003, providing formal notice of its determination of the manner in which the benefit amount was to be calculated, and advising that Vizinat's lump sum settlement of $400,000.00 would be prorated over the duration of his claim, allowing for a monthly offset of $1,646.54. Unum provided Vizinat's counsel with copies of the actual provisions in the Policy which authorized the offset. Unum advised in the same letter that, if Vizinat disagreed with Unum's claim decision, he was required to submit a written appeal. Detailed instructions were provided as to how the administrative appeal should be submitted and what would occur during the appeal process.

On June 13, 2003, Unum received correspondence from Vizinat's counsel dated June 9, 2003, stating that he was formally appealing Unum's decision that it was entitled to an offset for the third-party tort claim, which he contended was not a Jones Act case or a workers' compensation settlement.

Unum acknowledged receipt of the appeal by correspondence dated June 20, 2003. On appeal Vizinat's file was referred to a CPA for review and analysis of Unum's entitlement to offset and calculation of the monthly benefit in light of the termination of workers' compensation benefits, settlement of the third-party tort claim and award of SSDI benefits. The CPA noted

that Vizinat had been receiving $3,536.00 per month in workers' compensation benefits prior to the termination of that claim. Since that amount exceeded the total benefit payable under the policy, Vizinat had made the minimum monthly benefit of $288.36. In addition to the SSDI benefit offset for both Vizinat and the family SSDI benefit, the net amount received by Vizinat in the tort settlement was divided by the number of months for the duration of the claim which yielded a monthly offset of $1,646.54. Thus, it was concluded that Vizinat's benefit amount had been correctly calculated.

On July 7, 2003, Unum advised Vizinat's counsel that, on appeal, it had been determined that Vizinat's benefit had been correctly calculated. Unum provided a detailed accounting as to how the benefit was calculated and provided the relevant policy provisions regarding deductible sources of income. The letter noted that Vizinat had been receiving workers' compensation benefits in the amount of $3,536.00, which exceeded the amount of his gross disability payment and entitled him to receive the policy's minimum monthly payment of 10% of the gross disability benefit, which totaled $288.34 monthly. Unum then noted that Vizinat had received an SSDI award of $846.50 and, because he has a minor child, the estimated family benefit would be an additional $423.00. Unum also explained how it arrived at the $1,646.54 monthly offset for the third-party settlement, making the total deductible sources of income $2,915.54. Again, since this amount exceeded the total of Vizinat's gross monthly benefit, Unum advised that he remained entitled to the minimum monthly benefit of $288.34.

On April 2, 2014, Vizinat filed suit in State Court alleging that Unum was not authorized to take a credit for the settlement of Vizinat's lawsuit, which he now claimed was the settlement

6

of a 905B claim rather than a tort claim. Alternatively, Vizinat alleged that Unum should have sufficiently exhausted the credit to which it was entitled for the settlement.

The lawsuit was filed approximately eleven and one-half years after Unum first notified Vizinat's counsel on October 21, 2002, of the manner in which Vizinat's monthly benefit would be calculated for the remainder of his claim and almost 11 years after Unum upheld its decision following an administrative appeal on July 7, 2003. Unum removed the case to this court on May 7, 2014.

On October 22, 2018, Unum filed the instant Motion for Summary Judgment [Doc. No. 37]. On November 8, 2018, Vizinat filed a Memorandum in Opposition to the Motion for Summary Judgment [Doc. No. 39]. The parties agree that the facts are not in dispute.

On November 14, 2018, Magistrate Judge Carol B. Whitehurst held status conference with the parties. Counsel agreed that all issues were ripe for decision and could be decided on the briefs.

On April 2, 2019, the matter was reassigned to the undersigned. Having reviewed the briefs and records in this matter, the Court agrees that the pending motion is ripe for decision.

## II. LAW AND ANALYSIS

### A. Standard of Review

Summary judgment "shall [be] grant[ed] . . . if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its summary judgment burden by merely pointing out that

the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. *See* FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party carries its burden pursuant to Rule 56(a), the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324.

As the parties agree on the material facts and that the Court is presented with a legal question, this matter is particularly suitable to review on summary judgment.

### B. Accrual of Claim

Unum moves for summary judgment on the basis that Vizinat's claim is untimely. It contends that Vizinat's cause of action accrued, at the latest, when he was notified on July 7, 2003, that Unum was upholding its previous decision on the payment amount and that the statute of limitations ran three years later, on July 7, 2006, based on alternative theories. Vizinat opposes summary judgment, contending that Unum "is in a continuing state of breach of contract" because "each payment is a renewal of a continuing contract," and, therefore, his cause of action has not accrued. [Doc. No. 39, p. 2].

When an ERISA cause of action accrues for limitations purposes is a determination governed by federal law. *See Riley v. Metropolitan Life Ins. Co.*, 744 F. 3d 241 (1st Cir. 2014); *Edes v. Verizon Communications, Inc.*, 417 F. 3d 133, 139 (1st Cir. 2005); *Bowling v. Founders Title Co.*, 773 F. 2d 1175, 1178 (11th Cir. 1985)(citing *Rawlings v. Ray*, 312 U.S. 96 (1941)); *Gordon v. Deloitte & Touche Group Long Term Disability Plan*, 749 F. 3d 746, 750 (9th Cir.

2014) ("While the statute of limitation is borrowed from state law, accrual of an ERISA cause of action is determined by federal law.").

As a general proposition, the United States Court of Appeals for the Fifth Circuit has held that in ERISA cases involving denials of benefits, a cause of action accrues when a claim has been made and formally denied. *See Harris Methodist Fort Worth v. Sales Support Servs., Inc. Employee Health Care Plan*, 426 F.3d 330, 337 (5th Cir. 2005); *Hall v Nat'l Gypsum Co.*, 105 F.3d 225, 230 (5th Cir. 1997) (citing *Hogan v. Kraft Foods*, 969 F.2d 142, 145 (5th Cir. 1992)).

However, the Fifth Circuit has not established a clear rule when there is an allegation that benefits have been miscalculated or underpaid. Other circuits to consider this issue have either required a clear repudiation of the right to greater payment or when there is enough information for the pensioner or claimant to know of the miscalculation. *See Riley*, 744 F.3d at 245 (Riley was aware of his claim when he received his first disability check for less than he believed he was entitled to receive and threatened to sue because the payment "was a clear repudiation of Riley's assertion that he was entitled to more than the amount Met Life actually awarded"); *Novella v. Westchester Cty.*, 661 F.3d 128, 147 (2d Cir. 2011) ("[N]otice of a miscalculation can be imputed to a pensioner—and the statute of limitations will start to run—when there is enough information available to the pensioner to assure that he knows or reasonably should know of the miscalculation."); *Miller v. Fortis Benefits Ins. Co.*, 475 F.3d 516, 521 (3d Cir. 2007) ("[A]n erroneously calculated award of benefits under an ERISA plan can serve as 'an event other than a denial' that triggers the statute of limitations, as long as it is (1) a repudiation (2) that is clear and made known to the beneficiary.").

The Court need not determine, in this particular case, what rule or test the Fifth Circuit

Would apply, given the facts presented. Under any test, it is clear that, no later than July 2003, that Unum had reached a final decision on the calculation of Vizinat's benefits and had rejected or clearly repudiated his calculation. Thus, his claim accrued no later than that date.

In reaching this determination, the Court rejects Vizinat's argument that his cause of action never accrued because each miscalculated or improper payment is a continuing breach of contract. Fifth Circuit precedent fails to clearly establish that it is appropriate to apply a continuing-violation theory to the accrual of such a claim.[1] This Court finds persuasive the decisions of the courts which have considered this issue directly and have rejected the argument that each failure to pay constitutes a separate cause of action and accrual period under the continuing-violation theory. As the Second Circuit explained in *Novella*,

> We think that method is appropriate in ERISA cases, as elsewhere, only "where separate violations of the same type, or character, are repeated over time." *L.I. Head Start Child Dev. Servs., Inc. v. Econ. Opportunity Comm'n of Nassau County, Inc.,* 558 F.Supp.2d 378, 400 (E.D.N.Y. 2008). Usually, "[t]hese cases are marked by repeated decision-making, of the same character, by the fiduciaries." *Id*. But it is not as clear a fit in cases where, as here, "the plaintiff['s] claims are based on a single decision that results in lasting negative effects." *Id.* at 401; *see also Schultz v. Texaco, Inc*., 127 F.Supp.2d 443, 447 (S.D.N.Y.2001) ("[T]he mere fact that the effects of a single, wrongful act continue to be felt over a period of time does not render that single, wrongful act a single 'continuing violation.' ") . . .

661 F.3d at 146. Further, as the First Circuit recognized in *Riley*,

---

[1]In *Berry v. Allstate Ins. Co*., 84 F. App'x 442, 444 (5th Cir. 2004), a case brought pursuant to § 510 of ERISA, the Fifth Circuit stated that "we have never applied the continuing violations exception in the context of an ERISA case." However, in that case, the parties did not address this issue, and the Court found that it need not decide whether the continuing violations exception is applicable in § 510 ERISA cases, and assume for purposes of this analysis that the continuing violations exception is applicable in § 510 ERISA cases." *Id.* The Fifth Circuit has never addressed whether the continuing violation theory is applicable for a § 502 claim. Further, even in *Berry*, the Fifth Circuit noted the Supreme Court's distinction between a hostile work environment claim, which is subject to a continuing violations exception, and discrete acts, which are not.

> The policies underlying ERISA support our conclusion. One of ERISA's main purposes is the promotion of "predictability," through which ERISA seeks to "induc[e] employers to offer benefits by assuring a predictable set of liabilities." *Conkright v. Frommert*, 559 U.S. 506, 517, 130 S.Ct. 1640, 176 L.Ed.2d 469 (2010) (quoting *Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355, 379, 122 S.Ct. 2151, 153 L.Ed.2d 375 (2002)). Allowing beneficiaries to challenge alleged miscalculations on which the statute of limitations has already run by limiting the challenge to recent and future payments would undermine that predictability interest.

744 F.3d at 248.

In this case, Unum advised Vizinat's counsel as far back as 2002 that it was entitled to offset Vizinat's monthly disability benefit by prorating the amount actually received by Vizinat in the tort settlement over the life of the claim. Unum then paid Vizinat the minimum monthly benefit which it calculated that he was owed under the policy. At the very latest, a final decision was made in July 2003, and no further decisions have been made since that time. Instead, Unum has continued to issue payments consistent with its prior determination.

### C. Contractual Limitations

Based on the accrual date, Unum moves for summary judgment, arguing that Vizinat's cause of action is untimely because it was not brought within the contractual limitations of the Policy.

A participant in an employee benefit plan covered by the ERISA may bring a civil action under § 502(a)(1)(B) to recover benefits due under the terms of the plan. 29 U.S.C. § 1132(a)(1)(B). While participants must exhaust the plan's administrative remedies before filing suit to recover benefits, "ERISA § 502(a)(1)(B) does not specify a statute of limitations." *Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 571 U.S. 99, 105 (2013). Therefore, courts generally "'apply the most closely analogous state of limitations under state law.'" *See Kennedy v. Elec. Pension Plan,*

*IBEW No. 995*, 954 F.2d 1116, 1120 (5th Cir.1992) (quoting *DelCostello v. Teamsters*, 462 U.S. 151, 158 (1983)); *see also Heimeshoff*, 571 U.S. at 104. However, the Supreme Court has held that, "[a]bsent a controlling statute to the contrary, a participant and a plan may agree by contract to a particular limitations period, even one that starts to run before the cause of action accrues, as long as the period is reasonable." *Heimeshoff,* 571 U.S. at 105–06.

In this case, the Policy provides that the contractual three-year limitations period began to run from the time proof of loss is required. [Doc. No. 16, UA-CL-LTD-000201 ("You can start legal action regarding your claim 60 days after proof of claim has been given and up to 3 years from the time proof of claim is required, unless otherwise provided under federal law."). Vizinat has presented no argument, evidence, or case law to suggest that the *Heimeshoff* holding is inapplicable or distinguishable in this case. Even giving Vizinat the benefit of the doubt, as the Court must on summary judgment, it is clear that he presented evidence of his proof of claim, specifically including his claim that his benefits should not be reduced or offset, no later than Unum's final decision in July 2003. Therefore, he had until July 2006 to file suit, and he failed to do so. On this basis alone, Unum is entitled to summary judgment in its favor.

### D. Otherwise Applicable Statute of Limitations

Alternatively, even if the contractual limitations period was found unenforceable or its application unreasonable under the facts of this case, the otherwise applicable statute of limitations has run on Vizinat's cause of action.

As previously indicated, ERISA looks to analogous state law for the statute of limitations. Pursuant to LA. REV. STAT. 22:975(A)(11), "no legal action shall be brought after the expiration of one year after the time proof of loss is required to be filed." However, "under

Louisiana law, the parties to an insurance policy may contractually agree to limit the period within which suit must be filed, that such a contractual period of prescription is valid so long as it does not contravene a state statute or public policy." *Noland v. Sun Life Assurance Co. of Canada*, 252 F. 3d 436 (5th Cir. 2009); *Sargent v. La. Health Serv. & Indemnity Co.*, 550 So. 2d 843 (La. App. 2nd Cir. 1989). In this case, the contractual three-year limitations period is more generous and would also apply under state law. Therefore, Vizinat's claim would also be untimely if the state statute of limitations applied.

## III. CONCLUSION

For the foregoing reasons, Unum's Motion for Summary Judgment is GRANTED.

MONROE, LOUISIANA, this 9th day of April, 2019.

_____
TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE